Steve LINDSAY, Appellant,

v.

UNITED STATES, Appellee.

No. 84–1027.

District of Columbia Court of Appeals.

Submitted Oct. 23, 1986.
Decided Feb. 11, 1987.

---

Sandra J. Boek, Arlington, Va., appointed by this court, was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton, Washington, D.C., and Michael B. Hull, were on brief, for appellee.

Before PRYOR, Chief Judge, and NEBEKER and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Obviously in error, a trial court judge entered an order which prematurely and unconditionally discharged appellant from probation imposed under the Federal Youth Corrections Act ("FYCA"). Under the FYCA, such an early unconditional discharge had the added effect of automatically setting aside the conviction. Realizing the mistake, the judge eight days later vacated the erroneous order. Appellant appeals on the ground that the vacation of the erroneous order, with the consequent reinstatement of the set aside conviction, violated appellant's rights under the double jeopardy clause of the Constitution. Because we find nothing in these events that violates this clause, we affirm the action of the trial judge.

## I.

On June 7, 1983, appellant was convicted of two criminal offenses. Judge Warren R. King, acting under the FYCA, 18 U.S.C. § 5010(a)[1] suspended imposition of sentence and placed appellant on one year probation. Subsequently, appellant was arrested twice more: on September 9, 1983, for attempted second-degree burglary, and on December 15, 1983, for shoplifting. After appellant's arrest for the burglary charge, Judge King issued an order to show cause why the probation should not be revoked. After a preliminary hearing on November 10, Judge King twice continued the show cause proceeding until January 27, 1984.[2] At that time, defendant

---

1. The FYCA, 18 U.S.C. §§ 5005–5026, has since been repealed. Former subsection 5010(a) read:

    If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.

2. During this period Judge King had issued a second order to show cause based on the shoplifting arrest on December 15, 1983, to be heard at the same time as the original show cause order. The record does not show the final disposition of the shoplifting charge.

failed to appear and a bench warrant was issued. The bench warrant was subsequently quashed, and a new hearing date set. Defendant again failed to appear, and a second bench warrant was issued and again quashed. (In the meantime, appellant had pled guilty before Judge Stephen F. Eilperin to the attempted burglary charge on March 26, 1984.) On May 29, 1984, the show cause hearing was again continued. On May 31, Judge King committed appellant to the custody of the Attorney General for a study pursuant to the FYCA, 18 U.S.C. § 5010(e).[3] Judge King then scheduled the show cause hearing for August 21, 1984, later rescheduled for August 29, at which time he would consider the results of the § 5010(e) study.

On June 28, 1984, Judge King received an erroneous report from the probation office that appellant had satisfactorily completed his probation as of June 7, 1984, and as a result, Judge King discharged appellant from probation *nunc pro tunc* as of June 1, 1984. Such an order discharging appellant from probation prior to its expiration automatically set aside appellant's conviction pursuant to 18 U.S.C. § 5021(b),[4] and Judge King entered a certificate of vacation of conviction to that effect. On July 6, Judge King, having realized the mistake, summoned the parties and announced his decision to vacate both his order of discharge from probation and his certificate of vacation of conviction. One week later, appellant noted this appeal.[5]

**3.** 18 U.S.C. § 5010(e) provided:

If the court desires additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) [which provide for commitment and treatment of the youth offender] it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Commission shall report to the court its findings.

**4.** 18 U.S.C. § 5021(b) provided:

Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally dis-

**II.**

The gravamen of appellant's argument is that since the order of discharge from probation automatically set aside appellant's conviction, the vacation of that order, with the consequent reinstatement of the conviction, violated the appellant's constitutional right against being twice placed in jeopardy for the same offense. The appellant does not challenge the court's power to revoke the erroneously entered order, absent any such constitutional limitation. *See* Super.Ct.Crim.R. 36; *Clayton v. United States*, 429 A.2d 1381 (D.C.1981). Therefore, we confine our attention to the double jeopardy clause alone.

The Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." In *United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975), the Supreme Court summarized the coverage of this clause as follows:

[T]he Double Jeopardy Clause provides three related protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."

The interests underlying these three protections are quite similar. When a de-

charge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.

**5.** At the hearing on August 29, 1984, Judge King extended appellant's probation for an additional year under 18 U.S.C. § 5010(a). (It appears that that extended probation expired on August 28, 1985, without early discharge.) On the same day, August 29, 1984, appellant was sentenced by Judge Eilperin to one year probation on the attempted burglary charge, to which he had pled guilty on March 26, 1984.

fendant has been once convicted and punished for a particular crime, principles of fairness and finality require that he not be subjected to the possibility of further punishment by being again tried or sentenced for the same offense.

*Id.,* quoting from *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The Court cites *Ex Parte Lange,* 85 U.S. (18 Wall.) 165, 21 L.Ed. 872 (1873), which speaks to the issue of multiple punishment:

If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense....

... [T]he Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it.

*Id.,* at 168, 173, 21 L.Ed. 872.

The issue before us is whether the actions here contravene these protections provided by the double jeopardy clause.

### A.

First, appellant in effect invokes the general principle that if a lawful sentence is imposed, it cannot subsequently be made more severe, once the defendant has commenced serving confinement under it. *Tatum v. United States,* 114 U.S.App.D.C. 49, 50, 310 F.2d 854, 855 (1962). More specifically, he asserts that what occurred here is the functional equivalent of sentencing a defendant, intentionally modifying the sentence to make it less severe, and then revoking the modification and reimposing the original sentence, a sequence of events we have held barred by the double jeopardy clause. *United States v. Robinson,* 388 A.2d 469 (D.C.1978).

However, the facts in the case before us belie any analogy to *Robinson.* Central to that decision was a finding that the modification of the sentence (changing it from consecutive to concurrent) was an entirely valid and intentional act of the trial judge and not one made unlawfully or inadvertently. Furthermore, the modification

seemed on its face entirely reasonable and in no way in conflict with the factual situation then existing. None of these circumstances are present here.

Judge King's June 28 order purported to give appellant an early discharge from probation, with the consequent result of a setting aside of the underlying conviction. We have noted that when in 1961 the opportunity for earning a set aside certification was extended to youth offenders placed on probation, it was done to provide an additional incentive for maintaining good behavior by holding out to the youth an opportunity to clear his record. Hence, "only those offenders who display exemplary behavior during probation or commitment are entitled to have their convictions set aside." *Tuten v. United States,* 440 A.2d 1008, 1011 (D.C.1982), *aff'd,* 460 U.S. 660, 103 S.Ct. 1412, 75 L.Ed.2d 359 (1983). We repeated this analysis a year later in *Brooks v. United States,* 458 A.2d 66 (D.C. 1983), where we said:

Both [the legislative history of the FYCA and our case law] focus upon the centrality of the probationer's exemplary behavior to the determination of whether discharge and set aside shall be granted. The legislative history suggests that the privilege was created for the truly rehabilitated offender so that he might clear his record and "not be hampered in economic or other opportunities later in life." This court in *Tuten v. United States, supra,* recognized that legislative purpose when it stressed the connection between a probationer's exemplary behavior and the availability of discharge and set aside.

*Id.* at 67 (citations omitted). At the time of the entry of the erroneous order, appellant had pled guilty to the crime of attempted burglary committed during the probationary period. He was awaiting sentencing for this offense. The erroneous order was in square conflict with an outstanding order to show cause why the probation, far from being discharged, should not be revoked for the subsequent arrest and con-

viction. Furthermore, at that time, far from being at liberty on probation, appellant was in the custody of the Attorney General for a study under § 5010(e) of the FYCA, a status that we have held, under other circumstances, to be the equivalent of incarceration after sentencing. *Stewart v. United States,* 490 A.2d 619, 625–26 (D.C.1985).

Thus, Judge King's order was patently erroneous both in fact and in law. For double jeopardy purposes, it can be viewed as analogous to an illegal sentence. The result here is, accordingly, suggested by the doctrine that where a sentence has been pronounced that is unauthorized and illegal, the trial court may impose a new sentence more onerous than the original illegal sentence, even after the defendant has begun to serve the sentence. *Bozza v. United States,* 330 U.S. 160, 166–67, 67 S.Ct. 645, 648–49, 91 L.Ed. 818 (1947); *Christopher v. United States,* 415 A.2d 803 (D.C.1980). The facts also bear analogy to the situation where a jury returns a verdict of guilty but the trial court enters an erroneous judgment of acquittal. The Supreme Court has held that in such a case, where an appellate court concludes the judgment of acquittal was improper, the error can be corrected on remand by the entry of a judgment on the verdict without violating any protected double jeopardy interest of the defendant. *United States v. Jenkins,* 420 U.S. 358, 365, 95 S.Ct. 1006, 1011, 43 L.Ed.2d 250 (1975), citing *United States v. Wilson,* 420 U.S. 332, 344–45, 352–53, 95 S.Ct. 1013, 1022–23, 1026–27, 43 L.Ed.2d 232 (1975). Likewise here, the vacation of the erroneous order simply reinstates the original probationary status; no new prosecution or new punishment is involved. Consequently, we conclude that Judge King's order of June 28, plainly issued in

error,[6] created no vested rights protected by the double jeopardy clause. Judge King properly could vacate the order on July 6.

#### B.

■ Appellant's alternative argument is that the automatic "set aside" of the conviction under 18 U.S.C. § 5021(b) is the functional equivalent of the entry of a judgment of acquittal, to whose retraction even if erroneously entered the double jeopardy clause generally acts as a bar. *Richardson v. United States,* 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984); *Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 672, 7 L.Ed.2d 629 (1962). This argument misconceives the nature of the set aside. It is true that the set aside has sweeping effect in expunging the conviction from records available to the public, as well as removing legal disabilities created by the conviction. But it does not totally "rewrite history." The arrest record remains unexpunged, as do newspaper and other accounts of the conviction. The conviction records continue to be available to law enforcement personnel and court officials who have legitimate purposes for consulting the records. Indeed, there may be situations where access by other persons might be legitimate and important in the interests of justice. *United States v. Doe,* 235 U.S.App.D.C. 99, 730 F.2d 1529 (1984); *Doe v. Webster,* 196 U.S.App.D.C. 319, 606 F.2d 1226 (1979). Thus, the set aside, because it does not alter the fact of conviction but rather shields it from public view and effect, cannot be equated to, and indeed is distinctly different from, the final and unqualified act of an acquittal. *Cf. Stewart v. United States,* 439 A.2d 461, 464 (D.C.1981). This is not necessarily to say that a set aside,

---

**6.** These facts also distinguish this case from *Borum v. United States,* 133 U.S.App.D.C. 147, 409 F.2d 433 (1967). There a trial judge imposed sentences without indicating whether they were to be served concurrently or consecutively to other sentences being served by the defendant. As a result, they were deemed to be concurrent, although the trial judge intended

the opposite. A later effort to rectify the error was deemed too late; "there was nothing whatsoever to indicate, when on June 10 the sentences were articulated, that they were not to be operative immediately." 133 U.S.App.D.C. at 154, 409 F.2d at 440. In the case before us, there is ample evidence of irregularity in the issuance of the June 28 order.

once made, can be vacated under any and all circumstances without implicating double jeopardy concerns. On the facts here, however, the set aside can have no more protected status than the erroneous order of early discharge upon which it depends.

In sum, appellant here fails in his reliance on double jeopardy. "This Court has rejected the 'doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether, because the Court committed an error in passing the sentence.' The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Bozza v. United States, supra,* 330 U.S. at 166–67, 67 S.Ct. at 648–49.

Accordingly, the order of July 7, 1984 vacating the order of June 28, 1984 is

*Affirmed.*