**Calvin A. SMITH, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 95–CO–1721.

District of Columbia Court of Appeals.

Argued Nov. 25, 1996
Decided Dec. 30, 1996.

Mark J. Rochon, Washington, DC, for appellant.

Catherine F. Sheehan, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN, FARRELL, and REID, Associate Judges.

FERREN, Associate Judge:

Calvin A. Smith appeals from the trial court's decision to reimpose his original sentence after the court had granted Smith's motion to reduce it; he claims this change of mind violated the Double Jeopardy Clause of the Fifth Amendment. The government responds that the trial court's decision to grant the motion to reduce was based on an erro-

neous belief that the motion was unopposed, and that the trial court, for that reason, could properly vacate the reduced sentence and reinstate the original one after hearing the government's position. We conclude that the trial court unlawfully increased the defendant's sentence after an expectation of finality had attached to the reduced sentence. We therefore reverse.

## I.

Smith pleaded guilty to one count of assault with a dangerous weapon (ADW), D.C.Code § 22–502 (1996 Repl.), and one count of carrying a pistol without a license (CPWL), id. § 22–3204(a). The trial court sentenced him to three to nine years in prison on the CPWL charge, to run consecutively to a 40–to–120 month prison term the court imposed on the ADW count. On April 19, 1995, Smith timely moved for a reduction of sentence pursuant to Super. Ct.Crim. R. 35(b).[1] Smith supplemented his motion on May 23, and the trial court granted it as unopposed on June 5, 1995, reducing Smith's sentence on the CPWL count to one to three years. On June 6 and 7, the government filed, respectively, its opposition and a motion to reconsider the order reducing Smith's sentence. Together, these filings asserted both that Smith's motion was untimely[2] and that the Assistant United States Attorney handling the case had telephoned the judge's chambers, before he had signed the order reducing Smith's sentence, to inform the judge of the government's intention to file an opposition to Smith's plea for leniency and to explain the reason for the delay in filing the opposition. On June 7, 1995, the court vacated its prior order reducing Smith's sentence. The court later denied Smith's motion, allowing the original sentence to stand unaltered.

## II.

Smith contends on appeal that the trial court's order denying his motion to reduce sentence effectively increased his sen-

---

1. Super. Ct.Crim. R. 35(b) provides in relevant part: "A motion to reduce sentence may be made not later than 120 days after the sentence is imposed .... The Court shall determine the motion within a reasonable time."

2. The government concedes on appeal that Smith's motion for reduction of sentence was timely filed.

tence, in violation of the Double Jeopardy Clause.[3] The courts of this jurisdiction have long recognized a general rule—premised on double jeopardy concerns—that, once a defendant begins serving a sentence, the sentence may not lawfully be increased. *See Lindsay v. United States,* 520 A.2d 1059, 1062 (D.C.1987); *United States v. Robinson,* 388 A.2d 469, 471 (D.C.1978); *Tatum v. United States,* 114 U.S.App. D.C. 49, 50, 310 F.2d 854, 855 (1962). This rule, however, is not absolute. The trial court has authority to modify an illegal sentence to bring it into conformity with the law, even if the defendant receives a stiffer sentence as a result. *See Gray v. United States,* 585 A.2d 164, 166 (D.C.1991) (citing *Bozza v. United States,* 330 U.S. 160, 166–67, 67 S.Ct. 645, 648–49, 91 L.Ed. 818 (1947)); Super. Ct.Crim. R. 35(a) ("The Court may correct an illegal sentence at any time...."). A court also may resentence a defendant to an increased term when a defendant wins a new trial on appeal and is convicted again after the remand. *See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). This case presents still another scenario.

## A.

■ We have never had occasion to delineate precisely the extent to which the Double Jeopardy Clause prohibits an increase in the defendant's sentence. Nonetheless, both the government and Smith agree that the answer turns on whether a defendant has a legitimate expectation of finality in the sentence. While our cases do not reflect these exact words, they are consistent with the concern those words reflect. We agree that under the Supreme Court's double jeopardy jurisprudence, this expectation of finality is the dispositive consideration.

In *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the Court held that a statute permitting the government to appeal from a sentence imposed under certain dangerous special offender provisions of federal law did not violate the Double Jeopardy Clause. The Court rejected dicta from earlier cases such as *Ex parte*

*Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), and *United States v. Benz* 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931), which had suggested a per se rule against increasing a sentence. *DiFrancesco,* 449 U.S. at 139, 101 S.Ct. at 438–39. The Court concluded that under the circumstances of that particular case, where the governing statute specifically provided for the government's right of appeal, "there can be no expectation of finality in the original sentence." *Id.* The Court's repeated emphasis on the fact that the defendant had no such legitimate expectation of finality in his sentence, *see id.* at 136–39, 101 S.Ct. at 437–39, at least implicitly stands for the proposition that the Double Jeopardy Clause may bar resentencing where the defendant's expectation of finality is not undermined by a statutory scheme allowing a government appeal. Indeed, in *Pennsylvania v. Goldhammer,* 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985) (per curiam), the Court reinforced that implication in *DiFrancesco* as follows:

> In *DiFrancesco,* a federal statute clearly allowed appellate review of the sentences at issue. The Court noted that, in light of that statute, the defendant could not claim any expectation of finality in his original sentencing. Here, because the Pennsylvania Supreme Court held that resentencing was barred by the Double Jeopardy Clause, there was no need to consider below whether the Pennsylvania laws in effect at the time allowed the State to obtain review of the sentences on the counts for which the sentence had been suspended. We reverse and remand the case to the Supreme Court of Pennsylvania for a determination of that issue, and for further consideration of this case in light of *DiFrancesco.*

*Goldhammer,* 474 U.S. at 30–31, 106 S.Ct. at 354 (citations omitted).

Most federal courts of appeals "have interpreted *DiFrancesco* as holding that the double jeopardy clause protects a defendant's legitimate expectation of finality in the length of his [or her] sentence." *United States v. Fogel,* 264 U.S.App. D.C. 292, 301 n. 10, 829

---

**3.** The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offense

to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

F.2d 77, 86 n. 10 (1987) (collecting cases). This approach also accords with our own double jeopardy case law, which never has suggested that *DiFrancesco* invalidates any of our prior rulings. *See, e.g., Lindsay,* 520 A.2d at 1062 (reaffirming general principle that Double Jeopardy Clause bars increase of sentence after defendant has begun serving it).

### B.

With this background, we turn to a more detailed examination of our own decisions to determine whether, in the present case, Smith had a protectable expectation of finality in his sentence once the court granted his motion to reduce it.

In *Robinson,* we found a violation of the Double Jeopardy Clause where, after sentencing, the defendant moved for two sentences to run concurrently (instead of consecutively, as provided in the original sentence); the sentencing judge signed and dated an order granting that motion; and, a week later, the same judge signed another order denying the motion. *See Robinson,* 388 A.2d at 470. The first order was not entered on the court jacket or communicated to the parties. *See id.* Nonetheless, we concluded that the very signing of the second order unlawfully increased a sentence which the defendant had already begun to serve. Because the trial judge hearing the motion to correct sentence, pursuant to D.C.Code § 23–110, found that the first order, to run the sentences concurrently, had been entered intentionally, not inadvertently, we agreed that the sentencing judge could not later change his mind and restore the original sentence. *See id.* at 471–72.

In contrast, in *Lindsay,* the defendant had been placed on one year's probation under the Federal Youth Corrections Act. *See Lindsay,* 520 A.2d at 1060. After Lindsay was arrested for another crime, the trial court ordered him to show cause why his probation should not be revoked. *See id.* In the meantime, Lindsay had been committed to the custody of the Attorney General for a

study to evaluate whether he would benefit from treatment. *See id.* at 1061. While Lindsay was still in custody, the trial court received an erroneous report indicating that Lindsay had successfully completed his probation. *See id.* In response to this report, the court discharged Lindsay from probation, which had the effect of automatically setting aside the underlying conviction. *See id.* When the court discovered its mistake approximately one week later, it vacated the prior order. *See id.* We affirmed the trial court's ruling, concluding that *Robinson* was inapplicable because the order discharging Lindsay from probation had been "erroneous both in fact and in law." *Id.* at 1063.[4] The sentencing judge not only had been mistaken in fact about the reported completion of probation but also had ruled unlawfully because Lindsay, at the time, was in custody for evaluation and subject to "an outstanding order to show cause why the probation, far from being discharged, should not be revoked for the subsequent arrest and conviction." *Id.* at 1062–63. The order, for double jeopardy purposes, was "analogous to an illegal sentence" which could lawfully be corrected because the erroneous order had "created no vested rights protected by the double jeopardy clause." *Id.* at 1063 (citing *Bozza v. United States,* 330 U.S. 160, 166–67, 67 S.Ct. 645, 648–49, 91 L.Ed. 818 (1947)).

Similarly, in *Newton v. United States,* 613 A.2d 332 (D.C.1992), we upheld the trial court's decision to reverse an earlier decision granting the defendant's new trial motion under D.C.Code § 23–110 (1996 Repl.) based on ineffective assistance of counsel. 613 A.2d at 333. Under the law governing post-conviction proceedings, the court must notify the government if the motion cannot be resolved conclusively against the prisoner based on the record. *See id.* (citing D.C.Code § 23–110(c)). Thus, the government had no obligation to file a response to the prisoner's motion until notified by the court that a response and a hearing were necessary. The trial court, mistakenly believing that it had notified the government and that the govern-

---

4. In *Lindsay,* there was no challenge to the trial court's authority to vacate its order. *See Lindsay,* 520 A.2d at 1061. Lindsay only claimed that the court's decision to do so violated his double jeopardy rights.

ment had declined to file a response, granted the motion as conceded. *See id.* When the government filed a motion to vacate the order granting a new trial—asserting that the court had failed to notify the government to allow it an opportunity to respond—the court, recognizing the mistake, granted the government's motion. *See id.* Newton maintained that the trial court had no jurisdiction, let alone authority, to vacate its prior order. We disagreed, noting that the court had had a statutory obligation to serve notice on the government, and that the court, therefore, sought only to correct its own procedural mistake of law, not merely of fact. *See id.* at 334–35 (citing *Lindsay*). Declining to adopt the government's suggestion that Super. Ct. Civ. R. 60(b) should apply in collateral attack proceedings,[5] we held that the court's " 'inherent power to correct its record so as to reflect the truth and insure that justice be served' " permitted the court to rectify its own mistake. *Newton,* 613 A.2d at 334 (quoting *Rich v. United States,* 357 A.2d 421, 423 (D.C.1976)). We rejected the idea that a "wrong move by the judge means immunity for the prisoner" and noted the strong efficiency justification for allowing the trial court to correct errors that would otherwise burden the appellate courts. *Id.* at 335 (internal quotation marks omitted) (citing *Bozza,* 330 U.S. at 166–67, 67 S.Ct. at 648–49).

### III.

In the present case, Smith contends that *Robinson* dictates reversal of the orders vacating the reduced sentence and, ultimately, denying Smith's motion for reduction of sentence. He argues that, because the court had entered a valid—not a legally flawed—order reducing his sentence, the court's eventual reinstatement of the original sentence amounted to an increased sentence, contrary to his right to expect finality of the reduced sentence. The government replies that, because the court's original order granting Smith's motion to reduce sentence had been premised on a factual error—that the motion

was unopposed—the court could correct its mistake without infringing Smith's double jeopardy rights. According to the government, *Lindsay* and *Newton* together stand for the proposition that, when an order affecting a sentence is based upon a mistake of fact, the Double Jeopardy Clause does not prevent the court from correcting its order to reflect the true state of events.

When the court ruled, the government had filed no opposition to Smith's motion or even a formal request for extension of time to file an opposition. But even if the government may have notified the judge's chambers by telephone of its intention to oppose the motion, that act had no legal significance. Resolution of this case does not turn on whether the government informed the court that it was preparing its opposition, or even on what the court was thinking when it characterized the motion as unopposed. The government cites no rule, and we are aware of none, authorizing a trial court to change a sentence based on factual error alone. Indeed, court rules authorize correction of a sentence only when it is illegal or imposed in an illegal manner, Super. Ct.Crim. R. 35, or contains a clerical mistake, Super Ct.Crim. R. 36.

The government maintains, nonetheless, that the court can correct its error using its "inherent power to correct its record so as to reflect the truth." *Newton,* 613 A.2d at 334 (internal quotation marks omitted). We cannot agree. *Newton*'s discussion of the court's inherent power to correct its record must be understood in context. *Newton* concerned a motion under D.C.Code § 23–110 to set aside a judgment of conviction. It involved no issue of double jeopardy. Moreover, as detailed above, when the court granted Newton's motion and ordered a new trial, it had no authority to do so because it had not notified the government, as the statute required, to allow the government an opportunity to respond to the motion. By vacating its judgment and conducting a hearing on the merits of Newton's motion the court "set aside what it had no authority to do." *Bozza,* 330 U.S. at 167, 67 S.Ct. at 649

---

**5.** Super. Ct. Civ. R. 60(b) provides in relevant part: "On motion ... the Court may relieve a party or a party's representative from a final judgment [or] order ... [for] mistake, inadvertence, surprise, or excusable neglect...."

(citations omitted.) While the order was not inherently illegal, it was issued in a manner that departed from the statute. The government, moreover, could have appealed the court's ruling on the ground that the court had denied it the statutorily required opportunity to respond to Newton's motion and participate in the proceeding. D.C.Code § 23–110(f) (1996 Repl.). Newton, therefore, could have acquired no legitimate expectation of finality in such a court order issued in an unlawful manner.

■ Critically, in both *Newton* and *Lindsay,* the so-called mistake of fact went to the trial court's very authority to issue the orders that were subsequently vacated. In the present case, in contrast, there can be no question that the trial court had the authority to grant Smith's motion to reduce sentence when it did, in the way it did, and thus that the resulting order was altogether valid. Contrary to the situation in *Newton,* the sentencing judge had no obligation, statutory or otherwise, to notify the government that the judge was considering a sentence reduction or to invite a government response. In short, there was no irregularity in the signing of the order that can be understood to have undermined Smith's expectation of finality in the sentence.

The government's perception of a rule, derived from *Newton* and *Lindsay,* that would permit revocation of an order granting a reduced sentence under Super. Ct.Crim. R. 35(b)—based purely on factual error—cannot possibly be the rule if its implications are examined. If we adopted the government's pure mistake-of-fact approach, it would not be an exaggeration to say that a defendant could *never* have an expectation of finality in a sentence. The government, apparently, could come back to court at any time to claim that the sentence had been premised on an erroneous view of the facts. If, for example, a defendant received a lenient sentence because the evidence at sentencing had shown no criminal record, but years later the government discovered multiple prior convictions, the government could return to court under the government's theory and ask the trial court to increase the sentence so that the record would "reflect the truth" and jus-tice would be served. We decline to extend *Newton* and *Lindsay* in this manner. Only when a mistake of fact goes to the sentencing court's very authority to issue the order will a defendant's normal expectation of finality in the sentence be so eviscerated that double jeopardy concerns will not forbid the court to retrace its steps to "set aside what it had no authority to do." *Bozza,* 330 U.S. at 167, 67 S.Ct. at 649. (citations omitted) Where, as here, the asserted mistake of fact does nothing to undermine the court's power to order a particular reduced sentence, and the resulting sentence is accordingly valid both procedurally and substantively, the Double Jeopardy Clause forbids reimposition of a lengthier sentence.

\* \* \*

Accordingly, the order of the court denying Smith's motion to reduce sentence is reversed, and the case is remanded to permit entry of an order imposing a reduced sentence in conformity with the court's order of June 5, 1995 granting Smith's motion to reduce.

*So ordered.*

FARRELL, Associate Judge, concurring:

"[N]either the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls." *Jones v. Thomas,* 491 U.S. 376, 387, 109 S.Ct. 2522, 2529, 105 L.Ed.2d 322 (1989). At the same time, "[d]ouble jeopardy is an area of the law filled with technical rules, and the protections it affords defendants might at times be perceived as technicalities." *Id.; see also id.* at 396, 109 S.Ct. at 2533 (Scalia, J., with whom three other Justices join, dissenting) ("The Double Jeopardy Clause is and has always been, not a provision designed to assure reason and justice in the particular case, but the embodiment of technical, prophylactic rules that require the Government to turn square corners."). In this case, the government can argue with considerable plausibility that our holding yields a "windfall." There can be no doubt that the trial judge reduced appellant's sentence in the mistaken belief that the government was not opposing the motion to reduce. The judge reduced the sentence on

June 5 expressly noting that the motion was unopposed. The next day the government filed its opposition and, on June 7, moved to reconsider the reduction order, stating that it had not received the order until that day, had previously (without specifying a date) informed chambers that it would be opposing, and had not filed its opposition earlier only because it was awaiting preparation of the transcript of sentencing. That same day (June 7) the trial judge rescinded the reduction order "[f]or good cause" and stated that the motion to reduce would be "considered along with the government's opposition." There seems not the slightest question that if the judge knew of the government's intent to oppose the reduction, he would not have acted on June 5 but instead waited for its response. The judge will be surprised, to say the least, to learn that when his understanding of the true state of affairs was corrected, and he acted in conformity therewith, he violated double jeopardy.

Still another technical feature of our holding is apparent from application of the governing standard: whether appellant had a legitimate expectation of finality in the reduced sentence once it was entered. *United States v. DiFrancesco,* 449 U.S. 117, 137, 101 S.Ct. 426, 437–38, 66 L.Ed.2d 328 (1980). As appellant's counsel acknowledged at argument, appellant probably did not even know his sentence had been reduced until learning, simultaneously, of the order rescinding it. His actual expectation of finality in the reduction was therefore probably zero. This contrasts with the normal case in which a double jeopardy argument of this sort is made—where the defendant is present at sentencing, is told his sentence, and begins serving it with the expectation that, absent legal error, it will not be increased.

Technical or not, however, our holding follows from the principles the court enunciates. The legitimate expectation of finality that controls must be an objective standard: would a defendant knowing the sentenced imposed (or as reduced) reasonably expect it to be final? His actual knowledge is thus immaterial; ascertaining when a defendant learned of the reduction in a case such as this would be an impractical task. Moreover, as

Judge Ferren points out, the government's "mistake of fact" gloss on the finality standard is sweeping: a judge, for example, who misread the presentence report, thinking the defendant had one instead of three prior convictions, could recall the defendant and increase the sentence well after he had begun serving it. Further, the result of the order rescinding the reduction here was to leave appellant in suspense for five months while the judge reconsidered the matter. "One of the interests protected by constitutional finality is that of the defendant to be free from being compelled to 'live in a continuing state of anxiety and insecurity.'" *United States v. Fogel,* 264 U.S.App. D.C. 292, 303, 829 F.2d 77, 88 (1987) (quoting *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). Finally, the government can easily prevent mishaps such as occurred here by giving the trial judge timely written notice of its intent to file an opposition in the near future.