Claude Steve **DAVID**, Jr., **Appellant,**

v.

**UNITED STATES, Appellee.**

No. 89–676.

District of Columbia Court of Appeals.

Argued May 30, 1990.
Decided Aug. 31, 1990.

---

Richard S. Greenlee, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Barbara J. Valliere, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, BELSON, and STEADMAN, Associate Judges.

FERREN, Associate Judge:

Pursuant to a plea agreement, appellant pleaded guilty to one count of second-degree murder while armed, D.C.Code §§ 22–2403, –3202 (1989). On March 2, 1989, the trial court sentenced appellant to "life imprisonment." The trial court also stated that the mandatory minimum sentence for the crime was five years of imprisonment. The Judgment and Commitment Order

docketed that day memorializes this sentence. The following day the trial court signed and entered into the record a "corrected copy" of the Judgment and Commitment Order. This copy specified a sentence of "15 years to life," with a five-year mandatory minimum. Appellant argues on appeal that the trial court, in "correcting" his sentence, impermissibly increased the sentence and thereby violated his right not to be put in jeopardy twice for the same conduct. Because we conclude that the trial court's sentence, as originally pronounced, was ambiguous as to the minimum sentence, we look to the entire record for clarification and conclude that the sentence which the trial court attempted to impose at the sentencing hearing was in accordance with the sentence described in the "corrected copy" of the Judgment and Commitment Order. We therefore affirm the judgment as corrected by the trial court.

### I.

At appellant's sentencing hearing on March 2, 1989, the trial court opened the proceedings by stating, "Counsel, I must say for this young man the thought crosses my mind of getting him deported rather than paying ten years of incarceration at $18,000 or $20,000 a year and the cost to us taxpayers...." [1] A few moments later, the trial court again referred to a potential ten-year sentence, saying: "But, you know, then if I did something to see to it that the taxpayers didn't have to pay a quarter of a million dollars to hold this young dangerous fellow, murderer, in jail for ten years...." Shortly thereafter, the defense

attorney expressed, in open court, her understanding of the trial court's references, saying: "Your honor, the Court has made reference a couple of times to ten years. I suppose the Court is calculating the good time provisions as they apply to the maximum sentence here." [2] The defense attorney continued speaking, and the court did not comment on her understanding. The prosecutor, the defense attorney, and the defendant then had an opportunity to allocute to the court. Just before the defendant made his comments, the court noted: "As I understand, because this is an armed offense, there is a five-year minimum?" The prosecutor responded: "Yes, sir." Following a brief dialogue between the defendant and the court, the court pronounced the sentence:

> Accordingly, he is sentenced to ... life imprisonment[ ].[3] There is a mandatory minimum of five years because it was an offense committed with a pistol.

The trial court then signed the Judgment and Commitment Order. On it the term "life imprisonment" was handwritten in the space for the sentence, the box indicating that a mandatory minimum applied was checked, and "5 yrs." was written in as the applicable mandatory minimum sentence.[4] The following day, the trial court entered a "corrected copy" of the Judgment and Commitment Order in the record. This new order indicated, in the space for the sentence, "15 years to life." As in the earlier version, the box was checked indicating that a mandatory minimum applied, and "5 years" was written in as the applicable mandatory minimum sentence.

1. Appellant, apparently, is a citizen of Guyana.

2. The defense attorney was referring to the "institutional good time credits" her client would be eligible to receive if he were incarcerated at a District of Columbia correctional facility. D.C. Code § 24–428(a) (1989). If a defendant were sentenced to a minimum of fifteen years of incarceration, the application of good time credits would effectively reduce his or her minimum sentence to approximately ten years. *See id.* § 24–428(a)(5). A defendant's sentence, however, cannot be reduced by application of good time credits below the mandatory minimum sentence. *Id.* § 24–434.

3. Although the trial transcript reflects a sentence of "two life imprisonments," there is no dispute that the trial court orally imposed only one life term.

4. The government suggests in its brief that the courtroom clerk filled in the "5 yrs." and checked the box, and that the judge filled in the sentence of "life." The record does not reflect who completed what portions of the Judgment and Commitment Order.

On May 10, 1989, appellant filed a "Motion to Conform Order of Judgment and Commitment to Sentence Pronounced in Open Court." The trial court denied this motion on May 31, 1989, explaining:

The next day [May 3, 1989] the court's courtroom clerk told the court that the commitment had been returned by the clerk's office for its failure to specify a minimum sentence. The court was under the impression that a life sentence carried an automatic minimum of 15 years. That is why the court had said only "life imprisonment."

Appellant filed a timely appeal.

## II.

■ The felony to which appellant pleaded guilty, second-degree murder while armed, carries a maximum penalty of life imprisonment. D.C.Code §§ 22–2404(c) (1989); *see Haney v. United States*, 473 A.2d 393 (D.C.1984). Having sentenced appellant to life imprisonment, the trial court was required by statute to impose a minimum sentence not to exceed fifteen years of incarceration. D.C.Code § 24–203(a) (1989) ("Where the maximum sentence imposed is life imprisonment, a minimum sentence shall be imposed which shall not exceed 15 years imprisonment."). In selecting the minimum, a trial court exercises its well-established discretionary power. *See, e.g., Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949) ("sentencing judge ... exercise[s] a wide discretion ... in determining the kind and extent of punishment to be imposed within limits fixed by law"). Because appellant committed the offense with a weapon, however, he was subject to a mandatory minimum sentence of five years. D.C. Code § 22–3202(a)(1).

Both parties agree that the "sentence pronounced in open court constitutes the actual judgment of the court," *Davis v. United States*, 397 A.2d 951, 954 (D.C. 1979) (citing *Valentine v. United States*, 394 A.2d 1374 (D.C.1978) and *Rich v. United States*, 357 A.2d 421 (D.C.1976)), and that the written Judgment and Commitment Order is intended only to memorialize the oral judgment. *Id.* ("the written judgment must conform to the oral judgment"). The parties also agree that the trial court imposed a maximum sentence of life imprisonment. The parties differ, however, in their interpretations of the minimum sentence the trial court imposed. Appellant contends that the trial court—in stating immediately after imposing the maximum sentence that the mandatory minimum sentence was five years—effectively imposed the mandatory minimum as the discretionary minimum, that the sentence was legal, and that the trial court violated the double jeopardy clause by increasing the minimum term from five to fifteen years the following day. The government responds that the trial court imposed an illegal sentence because, although it mentioned the applicability of the mandatory minimum, it did not impose the required discretionary minimum. Therefore, says the government, citing *Jones v. United States*, 538 F.2d 1346, 1348 (8th Cir.1976), the trial court had not only the authority but also the duty to correct the sentence as soon as it learned of the illegality. In the alternative, the government argues that, at most, the sentence was ambiguous, citing *United States v. Villano*, 816 F.2d 1448 (10th Cir.1987), and that, in considering extrinsic evidence to "glean the meaning of the oral pronouncement," the trial court's intent is clear, controlling, and in accordance with the "corrected" Judgment and Commitment Order.

■ We agree with the government's alternative argument; the court's oral pronouncement of appellant's minimum sentence was ambiguous. Looking only at the words through which the trial court purported to impose its judgment in open court, we are unable to discern whether the court actually sentenced appellant to a minimum term of five years of incarceration (a sentence equal to the mandatory minimum term appellant would have to serve); or the court failed entirely to impose a discretionary minimum term (in all likelihood rendering the sentence illegal); or the court, in sentencing appellant very simply to "life imprisonment," attempted to impose (and believed it had imposed) the maximum legal

sentence: life imprisonment with a fifteen-year minimum term. Each of these possible interpretations is reasonable.

The words the trial court used with respect to a minimum sentence referred explicitly to the mandatory minimum. While the trial court may impose the mandatory minimum term as its discretionary minimum term, the court must make this exercise of discretion explicit; otherwise we are left, as we are here, with a judgment that is ambiguous. *See Villano*, 816 F.2d at 1453 n. 6 ("ambiguity may exist [when] ... the extent of the sentence cannot be ascertained from the language used").

■ Confronted by this ambiguity, we look to extrinsic evidence, consisting of the entire record, to "provide evidence of what was stated." *Id.* at 1452; *see id.* at 1453 (to resolve ambiguity, consult "such extrinsic evidence as the judgment and commitment order, the judge's intentions, or the defendant's understanding of what he [or she] believes the sentence to be"); *see also Davis*, 397 A.2d at 954 (" 'the sentence in writing should be referred to in order to resolve the ambiguities in the oral pronouncement ...' ") (quoting *Green v. United States*, 447 F.2d 987, 987 (9th Cir.1971) (per curiam), *cert. denied*, 405 U.S. 976, 92 S.Ct. 1201, 31 L.Ed.2d 250 (1972)). Although the trial court's unspoken intentions are not a consideration in determining what sentence was imposed when the spoken words are not ambiguous, *cf. Borum v. United States*, 133 U.S. App. D.C. 147, 153–54, 409 F.2d 433, 439–40 (1967), *cert. denied*, 395 U.S. 916, 89 S.Ct. 1765, 23 L.Ed.2d 230 (1969), we will consider, in ambiguous situations, the trial court's intent as further evidence of the length of the sentence. *See Villano*, 816 F.2d at 1453.

■ In this case, in considering extrinsic evidence, we must conclude that the trial court intended to impose—as defense counsel expected the trial court to impose—a discretionary minimum sentence of fifteen years. The evidence that supports this conclusion consists of the trial court's two references during the sentencing hearing to a ten-year sentence, the defense counsel's expressed understanding that this reference related to a fifteen-year sentence to which good time credits had been added,[5] the "corrected copy" of the Judgment and Commitment Order, and the trial court's explanation in its order denying appellant's motion to conform the sentence.

■ Our conclusion that the sentence, as orally imposed, was ambiguous also bears on whether appellant should be given the opportunity to reallocute.[6] If the sentence were illegal because the trial court had failed to impose a minimum sentence, as the government argued in its primary contention on appeal, we might conclude that, because the trial court had yet to exercise its discretion in setting a minimum sentence, appellant was entitled to be present and to reallocute at resentencing. *See Kerns v. United States*, 551 A.2d 1336, 1337–38 (D.C.1989) (per curiam) (where trial judge on remand has discretion in resentencing, appellant must be afforded opportunity to reallocute). Or if we were unable

---

**5.** Appellant contends that because the trial court's references to a ten-year sentence, and the defense counsel's comments on the references, occurred before appellant had allocuted, we cannot assume they reflect the trial court's intentions following allocution. The record belies any sympathetic response by the trial court following appellant's allocution. To the contrary, the trial court stated, just before sentencing appellant:

The presentence report for Mr. David [reflects] a horrible crime. It is really first degree murder but the Government saw fit to permit him to plead to second degree murder.

The presentence report describes him as having no remorse and as being an enforcer with a codefendant who had an Uzzi, the kind of weapon that has no other use except to commit violence and not for self-protection.

He is a defendant who has abused the privileges and freedoms of this country. Not only that, but he has a prior conviction for attempted robbery with a gun in Brooklyn, New York. That appears to have been committed a mere five months after he came to this country.

Accordingly ... I find that the defendant will not derive benefit under the Youth Rehabilitation Act of the District of Columbia.

**6.** *Villano* offers no guidance on this point, for the court concluded that the sentence was not ambiguous. *See Villano*, 816 F.2d at 1451.

to resolve the ambiguity in the sentence, we might conclude that appellant would be entitled to be present and to reallocate upon remand to the trial court for clarification of the sentence. In the present case, however, we are able to resolve the ambiguity and thus to determine the length of the minimum sentence. We have concluded that the trial court believed it was sentencing appellant to the maximum possible sentence available under the law: fifteen years to life. In imposing this sentence, the trial court exercised its discretion, having heard from all relevant parties, in the presence of appellant. We know of no legal basis for giving appellant another opportunity to allocate where there is no trial court discretion yet to be exercised.

In accordance with the foregoing analysis, the trial court sentenced appellant only once: in appellant's presence at the sentencing hearing on May 2, 1989. His double jeopardy rights, therefore, were not implicated. The trial court's denial of appellant's motion to conform sentence is hereby

*Affirmed.*