*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CO-689

JACOB HERRING, APPELLANT,

v.

UNITED STATES, APPELLEE.

09/14/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF3-12811-09)

(Hon. Ann O'Regan Keary, Trial Judge)

(Argued April 4, 2017                    Decided September 14, 2017)

*Mikel-Meredith Weidman*, Public Defender Service, with whom *Samia Fam* and *Jaclyn Frankfurt*, Public Defender Service, were on the brief, for appellant.

*David P. Saybolt*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *Bernard J. Delia*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and FISHER, *Associate Judges*, and REID, *Senior Judge*.

FISHER, *Associate Judge*:    After otherwise affirming appellant Jacob Herring's convictions on direct appeal, we remanded with instructions to merge his two convictions for possession of a firearm during a crime of violence ("PFCV"). On remand, the trial court amended the judgment and commitment order by

removing the consecutive PFCV count, but it retained a total sentence consistent with vacating the concurrent count. Upon discovering the mistake, the court reinstated the consecutive count, confirming that it had not intended to reduce appellant's total sentence. The principal issue before us now is whether the Double Jeopardy Clause precluded the court from correcting its error. We conclude that there is no double jeopardy bar and affirm.

## I.      Factual Background

After a jury trial, Mr. Herring was convicted of several offenses related to a shooting, including two counts of PFCV—Counts Three and Four of the indictment. On January 18, 2011, after carefully explaining her reasons for choosing this punishment, Judge Keary sentenced Mr. Herring to imprisonment for "a total of 174 months, or 14 and a half years." She first imposed concurrent terms of sixty-six months for two counts of assault with a dangerous weapon ("ADW")—one count for each victim—then sentences of sixty months' incarceration on each of the PFCV counts. One PFCV sentence would be served concurrently with the sentences for ADW, but the other PFCV sentence would run consecutively. The court also imposed a consecutive sentence of forty-eight months for obstruction of justice.

The judgment and commitment order accurately recorded Judge Keary's oral pronouncement, committing Mr. Herring "to the custody of the Attorney General to be incarcerated for a total term of 174 months." It reflected sentences of "60 month(s) incarceration, concurrent," on Count Three and "60 month(s) incarceration, consecutive," on Count Four. The various concurrent and consecutive periods of incarceration totaled 174 months. Ryshawn Jackson, appellant Herring's codefendant, was sentenced to 198 months in prison.

Both defendants appealed their convictions to this court. In an unpublished memorandum opinion and judgment issued in November 2013, we found no merit to their substantive complaints, but agreed that the PFCV convictions merged. *Jackson & Herring v. United States*, Nos. 11-CF-105 & 11-CF-507, Mem. Op. & J. at 2 (D.C. Nov. 25, 2013). Thus, we remanded the case with instructions "to vacate one of the PFCV convictions for each appellant." *Id.* at 3.

Judge Keary issued an amended judgment and commitment order for Mr. Herring in January 2014. This order removed Count Four—the PFCV sentence which had been designated consecutive in the January 2011 J&C—from the list of Mr. Herring's convictions. However, with respect to several counts,

including Count Three—the PFCV sentence that survived, it neglected to specify whether the sentences were consecutive or concurrent. The January 2014 J&C still committed Mr. Herring "to the custody of the Attorney General to be incarcerated for a total term of 174 months."

Because District law presumes that sentences run consecutively unless the court expressly indicates otherwise, *see* D.C. Code § 23-112 (2012 Repl.), Mr. Herring filed a motion asking the court to reinsert "concurrent" as it had appeared on the January 2011 J&C order. The government did not oppose Mr. Herring's motion, and the court obliged. In April 2014 the court issued another amended judgment and commitment order which specified a sentence of "60 month(s) incarceration, concurrent" on Count Three. Like every other judgment and commitment order issued in this case, it indicated that Mr. Herring was "to be incarcerated for a total term of 174 months." It appears that neither Mr. Herring nor the government brought to the court's attention the inconsistency on the face of the order: when aggregated, the terms of incarceration for the various counts now totaled only 114 months.

On March 16, 2016—nearly two years after the court's most recent amendment of the judgment and commitment order—Judge Keary's law clerk sent

a letter notifying Mr. Herring's counsel of "certain clerical errors in Mr. Herring's April 22, 2014 amended Judgment and Commitment Order." The letter stated that Judge Keary wished to correct four errors.[1] Among them,

> [t]he amended Judgment and Commitment Order vacated the wrong [PFCV] count (count 4 was vacated, instead of count 3[).] Consistent with Judge Keary's original sentencing intent, the PFCV sentence was to run consecutive to the Assault with a Dangerous Weapon ("ADW") count. Thus, Judge Keary proposes to correct this error in the amended Judgment and Commitment Order by vacating the Count 3 sentence and reinstating Count 4, the consecutive sentence. This does not change the defendant's original sentence in any way.

The letter cited Criminal Rule 36 as authority for correcting this inadvertent error.

Mr. Herring objected to this change, contending that double jeopardy principles prohibited reinstatement of Count Four because he had already begun serving his sentence on Count Three. He also argued that, in any event, Rule 36 did not authorize the court to make this change, which he asserted was substantive, not clerical. Finally, citing *Downey v. United States*, 91 F.2d 223 (D.C. Cir. 1937),

---

[1] The court had apparently made similar mistakes when merging the PFCV convictions of Mr. Herring's codefendant. After some debate, Mr. Jackson acquiesced to the court's proposed amendments.

Mr. Herring maintained that he was entitled to a hearing before a different judge at which Judge Keary could be called as a fact witness.

Judge Keary held a hearing on the issues, during which she explained:

> I in too hasty a review of the [J&C order], . . . failed to notice that the clerk had retained the concurrent PFCV count, Count Three, and had removed the Count Four PFCV sentence, which was imposed consecutively, thus altering the original sentence and reducing it by five years. Of course, the aggregate total sentence shown on the J&C was still listed as the same, 174 months.

She concluded that "[r]einstatement of the correct count, the consecutive count, Count Four, falls within the Court's inherent power to correct its record under Rule 36" and that "corrections [were] needed . . . to resolve the patent inconsistency on the face of the J&C . . . and . . . to maintain the Court's original sentencing intent back at the time of the sentencing in 2011."

Judge Keary also commented that there was "no reason for the Court to reconstruct its memory" in an on-the-record hearing before a different judge because her January 18, 2011, oral pronouncement unambiguously revealed her intent to sentence Mr. Herring to 174 months of incarceration. She explained that

her "continuing intent at the time of the 2014 judgment and commitment order was not to reduce his sentence, but that he serve the consecutive PFCV sentence that I had originally imposed and that's reflected as well by the lack of change in the total amount of . . . prison time, the 174 months, which has remained the same throughout the period of time despite multiple amendments to the judgment and commitment order."

Furthermore, Judge Keary did not view the alteration to the judgment and commitment order as presenting a double jeopardy issue:

> The defendant was tried and convicted by the jury of these offenses that the Court sentenced him to. I am not by my action today exposing him to a new risk of punishment for the same offense, I'm merely correcting the error made by my oversight in the amendment of the judgment and commitment order after the Court of appeals found that those two counts merged. The court's error, which I acknowledge, does not entitle Mr. Herring to a windfall of a five year reduction of his sentence.

She held that Mr. Herring "has had no legitimate expectation of finality" in the April 2014 J&C order, which "was ambiguous on its face." "Given the fact that the judgment and commitment order continued to list 174 months, it's difficult to see how he can assert that he legitimately thought his sentence was 60 months less

than that." Judge Keary also noted that the usual practice of courts—and hers—is to preserve the "consecutive sentence structure" originally imposed. She would not have reduced Mr. Herring's sentence by five years without giving notice to the parties and without explaining the reduction.

On July 7, 2016, the court issued a new amended judgment and commitment order which reinstated Count Four—the consecutive PFCV sentence—and committed Mr. Herring to a total term of incarceration of 174 months. As had been the case in January 2011, the concurrent and consecutive sentences on the various counts totaled 174 months.

## II.    Analysis

The Double Jeopardy Clause of the Fifth Amendment, which provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb," is one of the bedrock protections in the Bill of Rights. "But neither the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls." *Jones v. Thomas*, 491 U.S. 376, 387 (1989). In this case we must decide whether appellant is constitutionally entitled to the relief he requests or is instead seeking an unjustified windfall.

**A.    The Sentencing Court Did Not Violate the Double Jeopardy Clause When It Amended the April 2014 J&C Order**

**i.  Appellant Did Not Have a Legitimate Expectation of Finality**

Mr. Herring contends that Judge Keary increased his punishment in violation of the Double Jeopardy Clause when she amended the April 2014 J&C order to reinstate the PFCV conviction for which he had been given a consecutive sentence. To determine whether an increased sentence is forbidden by the Double Jeopardy Clause, we ask whether the defendant had a legitimate expectation of finality in the length of his previous sentence. (*Calvin*) *Smith v. United States*, 687 A.2d 581, 583 (D.C. 1996). This is an objective inquiry. (*Derron*) *Smith v. United States*, 984 A.2d 196, 199 n.3 (D.C. 2009).

Typically, a defendant attains a legitimate expectation of finality in a prison sentence when he begins serving it. *See* (*Calvin*) *Smith*, 687 A.2d at 583. However, some circumstances undermine a defendant's sentencing expectations even when he has started serving time. For one, if the government is statutorily authorized to appeal a sentence, a defendant cannot expect "finality in the original sentence." *See United States v. DiFrancesco*, 449 U.S. 117, 139 (1980). Likewise,

a defendant who has succeeded in having a conviction set aside on grounds other than insufficiency of the evidence may be retried and sentenced to a more severe penalty on that count. *See Burks v. United States*, 437 U.S. 1, 18 (1978); *North Carolina v. Pearce*, 395 U.S. 711, 720 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989); *see also, e.g.*, *Johnson v. United States*, 628 A.2d 1009, 1015 (D.C. 1993). Furthermore, where a defendant succeeds in getting convictions merged, this court has consistently permitted resentencing on remaining counts so that the sentencing court may effectuate its original sentencing plan. *See, e.g.*, *Heath v. United States*, 26 A.3d 266, 285 (D.C. 2011) ("[W]e remand the case for the trial court to vacate one of [the merged convictions] and determine whether resentencing on the remaining counts is necessary to effectuate its original sentencing plan."); *Thorne v. United States*, 471 A.2d 247, 249 (D.C. 1983) ("[W]e regard remand for resentencing as the appropriate remedy, since it will allow the trial court to impose sentence knowing that only one of the . . . convictions is available for sentencing purposes."). This is true even when it is necessary to increase sentences on individual counts in order to maintain the original sentencing plan.[2]

---

[2] Other jurisdictions have suggested that a "defendant's legitimate expectation of finality in [a] sentence . . . may be influenced by many factors such as the completion of the sentence, the passage of time, the pendency of an appeal or review of the sentencing determination, or the defendant's misconduct in

(continued…)

Mr. Herring argues that he had a legitimate expectation of finality once the court vacated the consecutive sentence on Count Four in favor of the concurrent sentence on Count Three.[3]  According to him, this expectation was legitimate because the sentencing court had the legal authority to vacate Count Four, the government had no right to appeal the court's selection of which duplicative PFCV count to vacate, the court's April 2014 J&C order stood unchanged for two years before the court notified Mr. Herring of plans to alter it, and there was "no reason to believe that Count Four could be reinstated."  For its part, the government maintains that Mr. Herring had no legitimate expectation of finality in the facially inconsistent April 2014 J&C order.

---

(…continued)

obtaining the sentence."  *State v. Hardesty*, 915 P.2d 1080, 1085 (Wash. 1996); *see also, e.g.*, *People v. Williams*, 925 N.E.2d 878, 887–91 (N.Y. 2010) (barring court from modifying sentence to include statutorily required period of post-release supervision where resentencing proceedings occurred after defendants had completed terms of incarceration and had been released from prison).

[3]  This first occurred in January 2014, but appellant apparently did not consider that order to be final because he asked the court to amend it.  Indeed, he feared that the sentence on Count Three would be treated as consecutive because the court had not designated it as concurrent.  We therefore understand appellant to be relying upon the order issued in April 2014.

Proper analysis must start with an understanding of the sentencing court's task at the time Mr. Herring's case was remanded from this court. Our November 2013 memorandum opinion and judgment directed "the trial court to vacate one of the PFCV convictions"—but we did not say which. Thus, the court had only two options available: (1) to vacate Count Three, thus maintaining the court's original sentencing plan, which imposed a total term of 174 months' incarceration; or (2) to vacate Count Four, thereby reducing Mr. Herring's total sentence to 114 months. At that point, Mr. Herring could expect to serve either the sentence on Count Three or the sentence on Count Four, but not both.

The April 2014 J&C order did not clearly reveal Judge Keary's choice between the two available options. The court simply could not have retained the PFCV conviction carrying a concurrent sentence and at the same time "committed [Mr. Herring] to the custody of the Attorney General to be incarcerated for a total term of 174 months," as the April order provided. We agree with Judge Keary that the order is ambiguous on its face.

We reject Mr. Herring's argument that the portion of the J&C specifying the "total term" should be disregarded in considering the legitimacy of his post-remand expectations. First, the "total term" provision—which remained unchanged since

the first judgment and commitment order was issued—supplied concrete information about the court's sentencing intent. This court and the Supreme Court have recognized that when a defendant is found guilty on a multicount indictment—as Mr. Herring was—trial courts often develop an overarching sentencing plan, then select sentences on each individual count to achieve that goal. When a conviction is set aside or vacated, the sentencing court often reconsiders the allocation of punishment across counts, not its previous determination of an appropriate aggregate punishment.[4] *See Dean v. United States*, 137 S. Ct. 1170, 1176 (2017) (discussing "sentencing package" doctrine); *Kitt v. United States*, 904 A.2d 348, 358 (D.C. 2006) ("presum[ing]" that, where two counts merged, trial court would vacate the concurrent count upon remand "so as to preserve the consecutive sentence structure it initially elected to impose").[5]

---

[4] Mr. Herring suggests that Judge Keary's mention of her "usual" reliance on this sentencing practice might constitute impermissible adherence to a uniform policy. *See Houston v. United States*, 592 A.2d 1066, 1067 (D.C. 1991) (deeming it "improper for the court to refuse to decide [a discretionary] question as a matter of discretion, but instead purport to be bound by a hard and fast rule"). Judge Keary's statements in no way displayed a refusal to exercise discretion in Mr. Herring's individual case. She merely acknowledged a sentencing practice—widely accepted by this court and courts around the country—and explained why the existence of the practice might undermine Mr. Herring's hope that she had intended to reduce his sentence without saying so.

[5] Judge Keary cited *Kitt* when explaining her decision to amend the April judgment and commitment order.

Second, no reasonable defendant would disregard the incongruity between the total term and the sentences listed on the face of the judgment and commitment order. *Cf. Gray v. United States*, 585 A.2d 164, 166 (D.C. 1991) ("The sentence from the bench was . . . at least ambiguous, for any reasonable person would have concluded that the judge did not mean to say what he said."); *Rich v. United States*, 357 A.2d 421, 423 (D.C. 1976) ("The sentence pronounced in open court must be construed as a whole to determine the court's intention."). This is to say nothing of the relative improbability that a sentencing court which had carefully considered and structured its sentence would suddenly reduce a defendant's sentence by five years, without explaining why, without a motion to reduce sentence having been filed, and without changing the total term specified on the judgment and commitment order. Contrary to Mr. Herring's contention, given the circumstances, it would not be "reasonable and legitimate for any person to look at the amended 2014 J&C, note that Count Four had been removed from under the heading 'Sentence of the Court,' and conclude that the trial court had selected Count Four as the PFCV count to vacate but failed to update the math at the bottom of the page." As we have cautioned in the civil context, "the proper response to a seemingly ambiguous court order is not to read it as one wishes." *Loewinger v. Stokes*, 977 A.2d 901, 907 (D.C. 2009).

Mr. Herring relies primarily on *United States v. Robinson*, 388 A.2d 469 (D.C. 1978); (*Calvin*) *Smith v. United States*, 687 A.2d 581; and *Borum v. United States*, 409 F.2d 433 (D.C. Cir. 1967), to argue that he had an expectation of finality in the April 2014 J&C order. None of those cases dictates a result here.

In *Robinson* the trial court signed and dated an order granting the defendant's motion for reduction of sentence, but "[t]he order apparently remained in the court's chambers and was never entered on the court jacket, criminal docket book, or communicated to the parties." 388 A.2d at 470. A week later, the court signed and dated another order, this time declining to reduce the sentence. *Id.* The defendant contended that the later "order constituted an illegal and unconstitutional increase in sentence in view of the fact that the [earlier] order" granted the sentence reduction. *Id.* We agreed that the trial court could not revisit its earlier decision granting the motion. *Id.* at 471–72. "Central to that decision," we later emphasized, "was a finding that the modification of the sentence . . . was an entirely valid and intentional act of the trial judge and not one made unlawfully or inadvertently." *Lindsay v. United States*, 520 A.2d 1059, 1062 (D.C. 1987); *see also Robinson*, 388 A.2d at 471 (noting that a different judge considering a D.C. Code § 23-110 motion had found that the sentencing judge intended to reduce the sentence and had not issued the order inadvertently). *Robinson* has no bearing

on a court's ability to correct a sentence which is ambiguous on its face, as is the situation here.

(*Calvin*) *Smith* similarly involved a trial court's attempt to revisit an unambiguous decision it had intentionally made. In that case, the trial court granted a defendant's motion to reduce his sentence, believing that the government did not oppose it. 687 A.2d at 582. Upon learning that the prosecutor had previously alerted chambers of his plans to file an opposition, the court vacated its order reducing the sentence. *Id.* The court later denied the defendant's motion, "allowing the original sentence to stand unaltered." *Id.* We held that the "dispositive consideration" was whether the defendant had "a legitimate expectation of finality in the sentence" once the court granted his motion to reduce it. *Id.* at 583. Although the court had made a mistake of fact, "there [had been] no irregularity in the signing of the order that can be understood to have undermined [the defendant's] expectation of finality in the sentence," and we held that the original sentence could not be reinstated. *Id.* at 586.

*Borum* is no more helpful to Mr. Herring. In that case, the sentencing judge neglected to state whether the sentences he imposed were to run concurrently with or consecutively to other sentences previously imposed. 409 F.2d at 439. Five

days later, the judge recalled the defendant to "clarify" that the sentences "should run consecutively to those [the defendant] was already serving." *Id.* at 440. Applying a presumption that "absent a specification of consecutiveness, multiple sentences operate concurrently," the court of appeals held that the trial court had unlawfully increased the sentence. *Id.* at 440. Because the sentences were "operative immediately," *id.*, the presumption had clarified any ambiguity in the oral pronouncement before the sentencing judge had attempted to explain his sentences.[6] In this case, by contrast, no presumption interceded to give Mr. Herring a legitimate expectation of finality in the April sentencing order; it remained ambiguous on its face until the sentencing court amended it.

More on point is *David v. United States*, 579 A.2d 1172 (D.C. 1990). We found no double jeopardy problem where a trial court amended a sentence that had originally stated "life imprisonment," with a mandatory minimum sentence of five years, to read "15 years to life," with a five-year mandatory minimum. *Id.* at 1173-74. The defendant argued that the court had "effectively imposed the mandatory

---

[6] It is noteworthy that *Borum* would be decided differently today. Shortly after that decision was issued, Congress enacted D.C. Code § 23-112 (1970), which reversed this presumption. Bemoaning that the judge's sentencing order had been "reversed on appeal because the judge had failed to use the magic word 'consecutively,'" the House Committee Report explained that "Section 23-112 [wa]s designed to prevent the reoccurrence of the undesirable result in the *Borum* case." H.R. Rep. No. 91-907, at 113 (1970).

minimum as the discretionary minimum" and illegally increased his sentence when it clarified that it meant to impose a discretionary minimum of fifteen years. *Id.* at 1175. But we concluded that the court's oral pronouncement was ambiguous as to the minimum sentence imposed. *Id.* at 1174–75. We explained that, "[a]lthough the trial court's unspoken intentions are not a consideration in determining what sentence was imposed when the spoken words are not ambiguous, we will consider, in ambiguous situations, the trial court's intent as further evidence of the length of the sentence." *Id.* at 1176 (citation omitted). After considering extrinsic evidence—including the trial court's explanation of why it had altered the initial order—we were "able to resolve the ambiguity and thus to determine the length of the minimum sentence." *Id.* at 1177.

*David* teaches that a sentencing court may resolve ambiguity in a prior sentencing order by referring to the "entire record," including "the trial court's intent." *Id.* at 1176; *see also id.* (noting that "the trial court's explanation in its order denying appellant's motion to conform the sentence" constituted part of the sentencing record). And it held that the court had sentenced the defendant "only once"; the process of resolving the ambiguity did not implicate his double jeopardy rights. *Id.* at 1177.

Mr. Herring did not have a legitimate expectation of finality in the concurrent sentence of sixty months for PFCV listed on the April 2014 J&C order because it was incompatible with the statement in the same order that the total sentence was 174 months. One provision or the other was obviously wrong. With such ambiguity apparent on the face of the sentencing order, he could have only a faint hope, not a legitimate expectation, that the court had changed its mind about him and his offenses and elected the more lenient of the two available options for merging the PFCV convictions. And he is not automatically entitled to the less severe construction of the unclear judgment and commitment order. *See David*, 579 A.2d at 1176 (resolving ambiguity in sentence based on the sentencing court's intentions as revealed by the entire record); *cf. Bozza v. United States*, 330 U.S. 160, 166–67 (1947) ("The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.").

### ii. The Sentencing Court Did Not Subject Mr. Herring to Multiple Punishments

Mr. Herring also asserts that reinstatement of Count Four unconstitutionally subjected him to multiple punishments for the same offense because he had already served one PFCV sentence when Judge Keary amended the judgment and

commitment order in July 2016. The government contends that this argument is both legally and factually unsound.

Appellant relies primarily on *Ex parte Lange*, 85 U.S. (18 Wall.) 163 (1873), and *In re Bradley*, 318 U.S. 50 (1943). The basic facts were the same in each case. A statute provided for alternative punishments of either imprisonment or a fine, but the trial judge (impermissibly) imposed both sanctions. The defendant paid the fine and began serving the term of imprisonment. Upon discovering the error, the trial court sought to vacate the original sentence and to impose only the term of incarceration. *See Lange*, 85 U.S. at 164; *Bradley*, 318 U.S. at 51–52. In both cases, the Supreme Court determined that the defendant's payment had constituted full performance of one statutorily authorized punishment and "the power of the court to punish further was gone." *Lange*, 85 U.S. at 175–76; *see also Bradley*, 318 U.S. at 52.

Mr. Herring fails to recognize that the Supreme Court has limited the import of *Lange* and *Bradley* and clarified what interest the bar on multiple punishments is intended to protect. *See United States v. DiFrancesco*, 449 U.S. 117, 139 (1980) ("The holding in *Lange* . . . [is] not susceptible of general application."). In *Jones v. Thomas*, 491 U.S. 376 (1989), a defendant was convicted of both attempted

robbery and first-degree felony murder based on a single incident. *Id.* at 378. The trial court sentenced him to consecutive terms of fifteen years for the attempted robbery and life imprisonment for the felony murder, specifying that the sentence for attempted robbery was to run first. *Id.* Later, however, the state supreme court concluded that it was improper to impose sentences for both felony murder and the underlying felony. *Id.* To correct the defendant's sentence, the state court vacated his attempted robbery conviction and its accompanying fifteen-year sentence. *Id.* at 379. Before the Supreme Court of the United States, the defendant argued that since he had already fully served the fifteen-year sentence at the time the state court vacated it, he was entitled to immediate release, otherwise he would be impermissibly subjected to a second punishment. *Id.* at 382.

The Supreme Court rejected this argument, concluding that the remedy chosen by the state court did not constitute multiple punishment; after the court's amendment of his sentence, the defendant stood convicted of felony murder alone and was serving only the sentence for that crime. *Id.* at 382. Furthermore, the Court refused to assign any significance to the fact that the sentencing court had specified that the fifteen-year sentence was to run before the life sentence began. *See id.* at 386. It reasoned that "[t]here [wa]s no indication that the order of the

sentences was of the slightest importance to the sentencing judge, and there [wa]s no reason constitutional adjudication should turn on such fortuities." *Id.*

The Court also clarified that *Lange* and *Bradley* did not stand for "the proposition that the Double Jeopardy Clause requires immediate release for the prisoner who has satisfied the shorter of two consecutive sentences that could not both lawfully be imposed," calling this "an overly broad reading of those precedents." *Id.* at 382. Instead, the Court explained, "in the multiple punishments context, th[e] [Double Jeopardy Clause] interest is 'limited to ensuring that the total punishment did not exceed that authorized by the legislature.'" *Id.* at 381 (quoting *United States v. Halper*, 490 U.S. 435, 450 (1989)). The double jeopardy problem in both *Lange* and *Bradley* was that by imposing both a fine and a term of imprisonment when only one or the other was permitted, the trial courts had exceeded the punishment authorized by the legislature. *Id.* at 383–84. It would not have been possible to remedy the error by crediting a fine against time in prison. *Id*. at 384.

Mr. Herring's argument depends on a notion we have already rejected—that he had a legitimate expectation that his sentence for PFCV would now be served concurrently with his sentences for ADW rather than consecutive to those

sentences.[7] But, as we have already explained, Judge Keary did not impose an additional or different sentence when she clarified how his one remaining PFCV sentence was to be served. Nor did she "exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Id.* at 381. Consecutive sentences for ADW, PFCV, and obstruction of justice are authorized by the legislature, as is one sixty-month sentence for PFCV. In sum, the Double Jeopardy Clause did not preclude the court from reinstating the consecutive sentence for PFCV.

**B.** **The Judgment and Commitment Order Contained a Clerical Error Subject to Correction Under Rule 36**

---

[7] Appellant's contention also depends on a particular ordering of his sentences. He claims to have completed his PFCV sentence because (1) Count Three was to be "served" concurrently with his ADW sentences, and (2) Judge Keary intended that those ADW sentences be served during his first sixty-six months in prison. But although Judge Keary thoroughly explained her reasons for imposing an aggregate sentence of 174 months, "[t]here is no indication that the order of the sentences was of the slightest importance to [her], and there is no reason constitutional adjudication should turn on such fortuities." *Jones v. Thomas*, 491 U.S. at 386.

Criminal Rule 36 provides, in pertinent part, that, "[a]fter giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record not including the transcript, or correct an error in the record arising from oversight or omission." Super. Ct. Crim. R. 36. Neither party disputes that Rule 36 permits a trial court to correct obvious, uncontroversial errors where the nature of the error and the correction needed are readily discernible.[8] But Mr. Herring asserts that Criminal Rule 36 did not authorize the sentencing court to modify the April 2014 J&C order "because the record failed to establish that the 2014 vacatur was the product of a 'clerical error.'" He also suggests that the sentencing judge relied impermissibly on her own recollections to determine that there was an error and to decide how to correct it.

### i. There Was a Clerical Error on the Face of the April 2014 Judgment and Commitment Order[9]

---

[8] *See, e.g.*, *Wills v. United States*, 147 A.3d 761, 777 n.15 (D.C. 2016) (labelling of conviction in various docket entries and judgment and commitment order); *Hooker v. United States*, 70 A.3d 1197, 1207 (D.C. 2013) (erroneous offense dates in judgment); *Bean v. United States*, 409 A.2d 1064, 1067 n.8 (D.C. 1979) (erroneous notation that appellant had entered a guilty plea when there had in fact been a jury trial).

[9] We discuss the April 2014 J&C order because Mr. Herring claims that order properly recorded his post-remand PFCV sentence and because he contests the sentencing court's amendment of that order. The April 2014 J&C order

(continued…)

Black's Law Dictionary defines "clerical error" as "[a]n error resulting from a minor mistake or inadvertence, especially in writing or copying something on the record, and not from judicial reasoning or determination." *Black's Law Dictionary* 659 (10th ed. 2014). "The basic distinction between clerical mistakes and [other] mistakes . . . is that the former consist of blunders in execution whereas the latter consist of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination or because on second thought it has decided to exercise its discretion in a manner different from the way it was exercised in the original determination." 46 Am. Jur. 2d *Judgments* § 142 (2017).

Mr. Herring insists that on this record "it is impossible to conclude" that there was "an error at all, much less a 'clerical error' as opposed to a 'judicial error.'" His abstract distinction between judicial errors and clerical errors is too illusory to provide a sufficient test. In a broad sense every mistake on a judgment

---

(…continued)
replicates one of the clerical errors on the face of the January 2014 J&C order. But, as we noted above, Mr. Herring apparently did not regard the January order—which did not indicate whether the PFCV sentence was to run consecutively or concurrently—as final because he asked the court to amend it. See *supra* note 3.

and commitment order was made by the judge who signed it. In any event, we disagree that it is "impossible" to determine on this record that there was clerical error. Indeed, looking only to the face of the April 2014 J&C order, that is the only reasonable conclusion one could draw.

The internal inconsistency on the face of the order could not have been the result of a reasoned determination: no sentencing court could have intentionally retained the concurrent PFCV count instead of the consecutive one if it also planned to have Mr. Herring incarcerated for a total of 174 months. Either there was a mistake in listing the sentences count-by-count or an error in recording the total term of incarceration. Both are clerical in nature. Nothing in the record even remotely suggests that the sentencing court had intentionally removed one PFCV count from the order but later changed its mind about which count to vacate.

### ii.    The Court's Reliance on the Entire Record

Mr. Herring takes a very narrow view of what evidence the court could consider in selecting one possible correction (removing the concurrent PFCV count and reinstating the consecutive one) over the other (changing the total term of incarceration to 114 months). He asserts that there is "no contemporaneous record

of the trial court's intentions [when merging the PFCV convictions] . . . other than the 2014 J&C alone." He therefore claims that "the post-remand J&C in this case is the totality of the trial court's sentence" and that Rule 36 permits correction only if we can look "to the four corners of that document to conclude that the elimination of Count Four was . . . error."

We have not felt bound by such a restrictive notion of relevance in our decisions applying Rule 36. Errors of the type mentioned in footnote 8, above, could not have been identified by looking within the four corners of the document in question, but only by comparing it to other parts of the record. Similarly, in *Bennett v. United States*, 620 A.2d 1342 (D.C. 1993), we looked outside the judgment and commitment order to determine that there had been a clerical error and how to fix it. The defendant had been convicted of both felony murder while armed (Count I) and premeditated murder while armed (Count J). After the convictions had been affirmed on direct appeal, the trial court issued an order vacating appellant's felony murder conviction and sentence. *Id.* at 1343–44. The court's amended J&C order nevertheless retained the felony murder conviction and sentence and failed to mention the premeditated murder count. We determined that the trial court had not unlawfully resentenced the appellant for felony murder, but rather had "made a clerical error in transposing Count I and Count J." *Id.* at 1344.

That error was subject to correction under Rule 36, *id.*, even though the court's true intentions could be understood only by reference to other portions of the record.

In *Rich v. United States*, 357 A.2d 421, a judge orally imposed "concurrent sentences, for an indeterminate time under the Youth Corrections Act, [18 U.S.C. §] 5010(A) [*sic*], to such time as they determine you would be eligible for parole." *Id.* at 422. The judge then issued a judgment and commitment order "which provided for 'commitment under 5010(A) of Federal Youth Corrections Act.'" *Id.* Later that day—seemingly after recognizing that § 5010 (a) authorized probation, not incarceration—the judge amended the judgment to read "'commitment under 5010(B) of Federal Youth Corrections Act.'" *Id.* This court rebuffed a claim that "the original, unamended orders of judgment and commitment correctly reflected the oral pronouncement of the sentencing judge that appellant would be given probation under 18 U.S.C. § 5010(a)." *Id.* at 423. "The sentence pronounced in open court must be construed as a whole to determine the court's intention." *Id.* Furthermore, "the record clearly reveal[ed] the intention of the sentencing judge to incarcerate, despite the court's bare mistaken reference to 5010(a)." *Id.* We determined that the sentencing court did not err in amending the original judgment and commitment order under Criminal Rule 36.

The lesson of these cases is that a court may consult the record as a whole to determine whether there has been clerical error. It may even hold additional proceedings where the existing record is insufficient. *Cf. Kennedy v. Reid*, 249 F.2d 492, 496–97 (D.C. Cir. 1957) (explaining the process for applying federal Rule 36 to correct clerical mistakes concerning more than "purely perfunctory aspects" of an order or judgment).

In this case the record provided significant circumstantial evidence of Judge Keary's intent when merging the PFCV counts. Contrary to Mr. Herring's argument, Judge Keary appropriately considered her carefully crafted 2011 sentencing plan. At the 2011 hearing, she stated her intent to follow the District's Sentencing Guidelines. Judge Keary observed that there were "three consecutive counts" because of "the different victims" and because the obstruction of justice count was based on a separate event. *Cf.* District of Columbia Voluntary Sentencing Guidelines Manual § 6.1 (May 2010) ("[O]ne crime of violence per victim per event needs to be sentenced consecutively to the others."). Although the 2011 hearing was not contemporaneous with the 2014 merger, it was relevant to discerning Judge Keary's intent at the later time as nothing in the record showed that she wanted to depart from the original sentencing plan when the court merged Mr. Herring's PFCV counts on remand. We see no reason to ask Judge Keary "to

blind [her] eyes to clear evidence of [her] own intention." *Gray v. United States*, 585 A.2d 164, 166 (D.C. 1991) (quoting *Kennedy*, 249 F.2d at 495).

Moreover, Judge Keary did not act impermissibly in considering other record evidence—including, for example, that there had not been a pending request to reduce Mr. Herring's sentence. And nothing on the record explained why, if Judge Keary had intended to reduce Mr. Herring's sentence in April 2014, she would have changed her mind in July 2016. Judge Keary could permissibly consider this evidence in deciding how to fix the clerical error on the face of the judgment and commitment order.

### iii.    Judge Keary Did Not Need to Testify

Mr. Herring nevertheless asserts that "the trial court violated the due process principles set out in the binding case of *Downey v. United States*[, 91 F.2d 223,] when it relied on its own memories, which were never introduced into the record as evidence, in making the factual finding that the vacatur of Count Four qualified as a 'clerical error.'" Judge Keary opined that *Downey* did not apply because she had considered only materials in the record and was not reconstructing her own memory.

In *Downey*, a trial court had sentenced a defendant to four years on each of three separate indictments for robbery. *Id.* at 226. But "the record of the sentences as entered by the clerk was ambiguous as to whether the sentences were to run concurrently or consecutively." *Id.* After four years, the defendant sought release from prison, contending that he had been sentenced to concurrent four-year terms and that, to the extent the record of his sentence was ambiguous, uncertainty had to be "resolved in favor of liberty." *Id.* It appears that no transcript of the sentencing hearing was available.

The government opposed the defendant's release, contending that "the sentences, as orally uttered by the justice when he imposed them, were consecutive, not concurrent, sentences, and that therefore the recorded entries thereof were in clerical error." *Id.* at 228. Following a hearing, the judge who had imposed the sentences ordered the record corrected. *Id.* The judge explained that "[t]he order correcting the records to show three consecutive terms of four years has been made in view of my clear and positive recollection that such were the sentences pronounced by me." *Id.* n.4. The judge quoted from letters sent to him by the defendant and others which described the terms of imprisonment as

consecutive, but those letters were not introduced in compliance with the rules of evidence. *Id.*

The court of appeals concluded that the sentencing order could be altered "upon a showing of disparity between the record and the truth, and hence upon a showing of the truth itself." *Id.* at 230. However, the sentencing judge could not merely rely on his own recollections or letters not admitted into evidence to reconstruct what had been stated at the oral pronouncement. "There [wa]s no foundation here for reviewing the correctness of the trial justice's determination of the question of fact as to what sentences he uttered four years before the hearing on the motion." *Id.* at 231.

But the court "d[id] not feel bound to go so far as to rule . . . that a record may not be corrected upon parol evidence or that there cannot be correction after the term." *Id.* at 233. Instead, it explained that "there should be 'materials in existence for altering the form of the judgment.'" *Id.* at 232 (quoting *United States v. Patterson*, 29 F. 775, 779 (D.N.J. 1887)). Furthermore, "where recourse to the memory of the justice who imposed the sentence is necessary to prove the fact, he should be heard as a witness, but not as judge and witness both." *Id.* at 233. The

court contrasted the case with situations where the record already contained sufficient evidence of the true sentence. *See id.*

This is not a case like *Downey* where the "memory of the justice who imposed the sentence is necessary to prove the fact." *Id.* As we explained above, there are ample materials in the record from which to discern Judge Keary's intent at the time she signed the April 2014 J&C order. *Cf., e.g.*, *Kennedy*, 249 F.2d at 495 (noting that "[t]here was no lack of 'materials' to establish" the sentencing judge's intent (quoting *Downey*, 91 F.2d at 230)).[10] While one of Judge Keary's comments at the July 2016 hearing ("I in too hasty a review of the [J&C order], . . . failed to notice") might be construed as a recollection, it was also a natural inference from the materials in the record. Under these circumstances, due process did not require Judge Keary to testify before another judge.

## III. Conclusion

---

[10] Mr. Herring relies on *Zalmeron v. United States*, 125 A.3d 341 (D.C. 2015), to argue that a *Downey* hearing is required. In *Zalmeron*, we "agree[d] that if the government seeks to present evidence, whether by affidavit or through the judge's own testimony, of the trial judge's recollection, *Downey* requires this to take place before a different judge." *Id.* at 348. But we made explicit that reassignment to another judge would not be required if there was no need to rely on the trial judge's recollection. *See id.* at 349.

There was no double jeopardy bar to reinstating the consecutive sentence for PFCV, and Criminal Rule 36 provided authority to correct the clerical error. The judgment of the Superior Court is hereby

*Affirmed.*