*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CO-0219

RANDOLPH D. WARD, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(2019-CF3-011793)

(Hon. Robert A Salerno, Trial Judge)

(Submitted February 21, 2024                    Decided March 14, 2024)

*Lucas I. Dansie* for appellant.

*Matthew M. Graves,* United States Attorney, and *Chrisellen R. Kolb, Nicholas P. Coleman, Amanda Williams,* and *Lauren "Luca" Winer*, Assistant United States Attorneys, for appellee.

Before MCLEESE, DEAHL, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: In 2019, appellant Randolph Ward pled guilty pursuant to D.C. Superior Court Rule of Criminal Procedure 11(c)(1)(C) to one count of armed robbery and one count of attempted robbery. The Superior Court sentenced him in accordance with the parties' plea agreement to 108 months of imprisonment, consisting of 72 months for the armed robbery and 36 months for the

attempted robbery.  Three years later, Mr. Ward moved for correction of his sentence, with the parties agreeing that the 36-month sentence for attempted robbery was illegal.  The trial court agreed that 24 months was the maximum sentence for the attempted robbery and it imposed that term in a corrected judgment, but, in order to maintain the total agreed-upon sentence of 108 months, the court increased the sentence for the armed robbery (which Mr. Ward had already begun serving) to 84 months.  Mr. Ward argues on appeal that the trial court reversibly erred in doing so. We disagree and affirm.

## I.     Background

## A.

According to the plea agreement proffer of facts, Mr. Ward used a pistol to commit or attempt to commit two robberies in two separate incidents in September 2019.  First, he robbed the Smokey Shoppe in Southeast Washington, D.C., by pointing the pistol at the cashier and taking approximately $400 from the cash register.  Second, six days later, he entered Rasheed's Clothing in Northeast D.C., pointed the pistol at the owner and his 15-month-old granddaughter, and ordered the owner to turn over his personal property.  The owner grabbed Mr. Ward and wrestled him to the ground.  Mr. Ward's gun discharged twice during the struggle but no one was hurt.  The owner detained Mr. Ward until police arrived.

Mr. Ward pled guilty pursuant to a plea agreement to armed robbery in violation of D.C. Code §§ 22-2801 & -4502 and attempted robbery in violation of D.C. Code § 22-2802. The plea agreement was under Super. Ct. Crim. R. 11(c)(1)(C), which provides that the parties can "agree that a specific sentence or sentencing range is the appropriate disposition of the case" and that "such a recommendation or request binds the court once the court accepts the plea agreement." The parties agreed in the plea agreement "that a sentence of 108 months of incarceration is the appropriate sentence in this case." Thus, "[i]f the Court accepts the plea agreement and the specific sentence agreed upon by the parties, then the Court will embody in the judgment and sentence the disposition provided for in [the] plea agreement, pursuant to Rule 11(c)(4) of the Superior Court Rules of Criminal Procedure." The plea agreement did not allocate the 108-month agreed-upon aggregate term between the two offenses, nor did the government recommend an allocation in its sentencing memorandum.

The trial court accepted the Rule 11(c)(1)(C) plea and sentenced Mr. Ward consistent with it, to a total of 108 months of imprisonment. The court allocated 72 months to the armed robbery and 36 months to the attempted robbery, to be served consecutively. The Judgment and Commitment Order stated that Mr. Ward was sentenced to 72 months incarceration on the armed robbery count and 36 months incarceration on the attempted robbery count and that Mr. Ward was being

"committed to the custody of the Attorney General to be incarcerated for a total term of 108 months."

**B.**

In 2022, Mr. Ward moved under Super. Ct. Crim. R. 35(a) to correct his sentence on the ground that the 36-month term for attempted robbery was illegal because, under Sections 22-2802 and 24-403.01(b)(7) (relating to offenders whose terms of supervised release have been revoked), the maximum sentence for Mr. Ward for attempted robbery was 24 months. The government and the trial court agreed and that question is not before us.[1]

Having recognized that the attempted robbery sentence was illegal and had to be reduced to 24 months, the trial court agreed with the government that the total 108-month sentence should be maintained—meaning that the armed robbery sentence should be increased from 72 to 84 months—because the plea was under

---

[1] According to the trial court: "Although the maximum statutory penalty for Attempted Robbery is 3 years, D.C. Code § 24-403.01(b-1) provides that the term of imprisonment imposed by the court shall not exceed the maximum term of imprisonment authorized for the offense less the maximum term of imprisonment authorized upon revocation of supervised release. In this case, Mr. [Ward] could face one year of imprisonment for the Attempted Robbery offense if his supervised release were to be revoked. Accordingly, the maximum period of imprisonment to which Mr. [Ward] could have been sentenced for the Attempted Robbery offense is 24 months."

Rule 11(c)(1)(C) and the parties had agreed and expected that Mr. Ward would serve 108 months. The court acknowledged that, generally, a sentence may not be increased after the defendant has begun serving it, but it cited as an exception to that rule the "sentencing-package doctrine," as described in *Herring v. United States*, 169 A.3d 354 (D.C. 2017): "This court and the Supreme Court have recognized that when a defendant is found guilty on a multicount indictment . . . trial courts often develop an overarching sentencing plan, then select sentences on each individual count to achieve that goal. When a conviction is set aside or vacated, the sentencing court often reconsiders the allocation of punishment across counts, not its previous determination of an appropriate aggregate punishment." *Id*. at 360-61 (citing *Dean v. United States*, 581 U.S. 62, 68-69 (2017), and *Kitt v. United States*, 904 A.2d 348, 358 (D.C. 2006)). The trial court therefore concluded that it was "able to correct the sentence in this case by reallocating the periods of incarceration between the two offenses in order to maintain the total term of incarceration at 108 months, consistent with the Rule 11(c)(1)(C) plea agreement." It then issued a corrected judgment that maintained the total 108-month term of imprisonment but allocated 84 months to the armed robbery conviction and 24 months to the attempted robbery conviction.

This appeal followed.

## II.     Analysis

We agree that, in correcting the sentence, the trial court was permitted to maintain the total 108-month term of imprisonment that the parties had agreed to and that constituted Mr. Ward's expected sentence. We therefore affirm.

This court reviews resentencings for abuse of discretion. *Saunders v. United States*, 975 A.2d 165, 166-67 (D.C. 2009). We review issues of law, including questions involving double jeopardy, de novo. *United States v. Allen*, 755 A.2d 402, 406 (D.C. 2000).

It is true that, "[t]ypically, a defendant attains a legitimate expectation of finality in a prison sentence when he begins serving it." *Herring v. United States*, 169 A.3d 354, 359 (D.C. 2017). This principle is rooted in the Double Jeopardy Clause of the Fifth Amendment, which provides, among other things, that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V; *see Herring*, 169 A.3d at 359. We said in *Herring*, though, that "some circumstances undermine a defendant's sentencing expectations even when he has started serving time." *Id*. We provided examples—including government sentencing appeals and resentencings after convictions were ordered merged—of circumstances when a defendant's expectation of finality must give way, "even when it is necessary to increase sentences on individual counts in order

to maintain the original sentencing plan." *Id.*; *see, e.g.*, *United States v. Pimienta-Redondo*, 874 F.2d 9, 16 (1st Cir. 1989) (en banc) ("[T]he double jeopardy clause did not foreclose resentencing on the affirmed count, within applicable statutory limits, to effectuate the trial court's original sentencing intentions."); *United States v. Bentley*, 850 F.2d 327, 328 (7th Cir. 1988) ("[W]henever a reversal on appeal undoes a sentencing plan, or even calls the plan into question, the district court should be invited to resentence the defendant on all counts in order to achieve a rational, coherent structure in light of the remaining convictions.").

Under *Herring*, Mr. Ward's expectation of finality in his armed robbery sentence gave way to the trial court's overarching sentencing plan. The parties agreed in a Rule 11(c)(1)(C) plea agreement that an aggregate sentence of 108 months was appropriate for Mr. Ward's offenses, and Mr. Ward understood and expected—in light of the way Rule 11(c)(1)(C) pleas work—that he would serve that sentence if the trial court accepted the plea agreement. Although the trial court had to allocate the 108-month sentence between two offenses, Mr. Ward could not have reasonably expected that he would serve less than 108 months if one of the allocations was reduced—especially in light of the Judgment and Commitment Order's statement that he was to be "incarcerated for a total term of 108 months." *See Herring*, 169 A.3d at 360 ("[T]he 'total term' provision—which remained unchanged since the first judgment and commitment order was issued—supplied

concrete information about the court's sentencing intent."); *Bentley*, 850 F.2d at 329 ("Bentley received the same net sentence he had before. Since the package was not increased, none of his legitimate expectations has been disregarded.").

We find unpersuasive Mr. Ward's argument that the sentencing-package doctrine and *Herring* are limited to cases where a *conviction* was set aside or vacated. The sentencing-package doctrine refers more generally to instances in which a court is imposing a sentence for multiple convictions and "develop[s] an overarching sentencing plan, then select[s] sentences on each individual count to achieve that goal." *Herring*, 169 A.3d at 360. The relevant consideration on resentencing is that one of the sentences on the individual counts has been changed or eliminated, not whether that resulted from vacatur of the conviction or another development. *See id.* at 359 (providing examples of "circumstances" that "undermine a defendant's sentencing expectations even when he has started serving time"); *United States v. Catrell*, 774 F.3d 666, 670-71 (10th Cir. 2014) (rejecting the argument that "the sentencing package doctrine only applies when a *conviction* has been vacated, as opposed to just a sentence" and remanding for sentencing court to adhere to "its original intent and the binding plea deal" and "resentence on all counts in accordance with the agreement"); *Bentley*, 850 F.2d at 328-29 (applying sentencing-package doctrine where defendant obtained a reduced sentence on one count due to the original sentence's illegality rather than vacatur of the count and observing that

"nothing but pointless formalism would support a distinction between a sentencing plan disrupted by the vacatur of some counts on appeal and a plan shattered by the district court's own recognition that the plan was infested with error").[2]

---

[2] In *United States v. Grant*, 9 F.4th 186 (3d Cir. 2021) (en banc), the Third Circuit noted that the sentencing-package "doctrine has been applied in our precedential opinions only to vacated convictions—not vacated sentences," but it did so in explaining why any error by the sentencing court in failing to resentence the defendant on all counts following vacatur of the sentence on one count "was not plain because it was not 'clear under current law.'" *Id*. at 200 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). We do not see the court's holding in the context of plain-error review as foreclosing application of the sentencing-package doctrine where a sentence has been vacated or modified, and, indeed, the court noted that "[i]n two non-precedential opinions, we have applied the sentencing-package doctrine to vacated sentences." *Id*. at 200 n.5.

In *United States v. Jordan*, 895 F.2d 512 (9th Cir. 1989), the defendants had moved to correct concurrent sentences on multiple counts that were erroneously above the statutory maximums. *Id*. at 513. The sentencing court imposed new sentences below the statutory maximums but ordered that they were now to run consecutively so as to "effectuate the court's intent as to the overall term of imprisonment without violating the statutory maximums." *Id*. The Ninth Circuit reversed, relying on prior circuit precedent holding that, in correcting an illegal sentence, a trial court can only eliminate the illegal excess of the terms imposed and cannot change the sentences from concurrent to consecutive. *Id*. at 514. The court recognized contrary out-of-circuit authority that "might be fair" but observed that it was bound by its precedent. *Id*. at 515. *Jordan*, moreover, focused on the sentencing court's authority to change concurrent sentences to consecutive sentences, not its authority to adjust the lengths of sentences for multiple counts; the court of appeals expressly stated that, on remand, the sentencing court could increase the sentences from below-maximum to at-maximum sentences, so long as it kept the sentences concurrent. *Id*. at 516 (the defendants "cannot have had any expectation of finality in the two-year sentences they received" when the sentencing court resentenced them initially). Accordingly, we find *Jordan* also unsupportive of the proposition that the sentencing-package doctrine applies only where a conviction was vacated.

Ultimately, the point is that "'neither the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls.'" *Herring*, 169 A.3d at 359 (quoting *Jones v. Thomas*, 491 U.S. 376, 387 (1989)). Accordingly, we find no error in the trial court's determination that *Herring* applies here and that re-allocation of the sentences on Mr. Ward's individual convictions was warranted to achieve the court's overarching sentencing plan.

### III.    Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

*So ordered.*